## HURD v. TOMKINS.

1. PARTNERSHIP—A MIXED QUESTION OF LAW AND FACT.—What a partnership is, is a question of law. Its existence in the given case, however, is a question of fact, depending for its solution upon inferences to be drawn from the evidence adduced.

2. PARTNERSHIP—PROOF OF.—The same strictness of proof is not required by a plaintiff to charge defendants as partners as would be necessary if the suit had been instituted by, instead of against the firm.

3. MECHANICS' LIENS—INTEREST UPON CLAIM SECURED BY.—Where a debtor agrees to pay interest upon a claim secured by a mechanic's lien such agreement may be enforced where the rights of third parties are not affected thereby.

*Appeal from District Court of Lake County.*

IN the complaint filed by H. H. Tomkins et al., it is alleged that plaintiffs were co-partners, and that as such copartners they sold the defendants, Nathan S. Hurd and L. C. Rockwell et al., goods of the value of $3,746.22, upon open account. These goods were sold between the 1st day of September, 1884, and the 26th day of May, 1885, and that during that time $1,976.53 was paid upon said account, leaving a balance due of $1,769.69. It is also alleged in the com-

plaint that the said materials and supplies were furnished for and in working and used in developing the Leo lode, situate in California Mining District, Lake county, Colorado. It is further alleged that in July, 1886, plaintiffs prepared a notice of their intention to claim a lien upon the Leo lode and duly filed the same, together with an abstract of indebtedness, properly verified. Plaintiffs pray for judgment against the defendants and for a lien upon the property for the same.

To this complaint Hurd appeared and filed a separate answer, and also answered jointly with Rockwell. The Rockwell answer it is unnecessary to consider further, as the case was subsequently dismissed as to him. The Hurd answer consists of a specific denial of each allegation of the complaint. Upon these issues the case was tried to the court without a jury. Upon this trial the court found that the defendants, Hurd et al., were indebted to plaintiffs in the sum of $1,769.69 debt, together with $368.65 interest. A decree was rendered for the sum of $2,138.24. And this amount was declared to be a valid lien against the Leo lode, which was ordered to be sold in satisfaction thereof. Hurd excepts to this judgment and brings the case here by appeal.

Mr. L. C. ROCKWELL, for appellant.

Mr. J. B. BISSELL and Mr. J. S. JONES, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

At the trial it was practically conceded that the materials and supplies furnished were of the value stated in the complaint and that the same were used in and about the development of the Leo mine. It was and is claimed, however, that neither Hurd personally nor his interest in property was liable for this account. It is also contended that no interest should have been allowed upon the account. It is admitted that John W. Watson was one of the owners of the Leo mine up to Dec. 5, 1885, and that upon that day he sold to

each of the defendants, Rockwell and Hurd, a one-thirty-second interest in said mine. It is shown by the testimony that at the time he sold the property to these defendants Watson had practically exhausted all his resources and was compelled to make the sale in order to continue work.

It is claimed on the part of appellees that the testimony shows that a mining partnership existed between appellants for the working of the Leo mine and that Hurd is liable as one of the members of said partnership.

At the time of the purchase the evidence discloses that the property was being worked under the direction of Watson. Hurd then visited the property. Not having authority to enter from Watson, who was absent, at first he was refused admittance to the mine. The witness Blaisdell, who was at the time in the immediate charge of the property, testifies that before he would allow Hurd to go into the workings he (Hurd) assured him that he was interested in the property, and it would be of benefit to all parties for him to see it. Blaisdell thereupon sent down Peter Davis, the foreman of the mine, to show Hurd the workings. Upon his return the witness states that Hurd expressed himself as satisfied with the appearance of the property, and said that as far as his interests were concerned he was willing to pay his proportion of the expense necessary to continue the work for another year.

Peter Davis, the foreman of the mine, testifies in reference to this visit that he accompanied Hurd on his trip through the mine. The witness states that together with Hurd he went all through the workings and pointed out to him the fact that they were then working in mineral, and advised Hurd, in case the owners were contemplating shutting down work, it would be better to shut down then while they had the mineral. This witness testified that Hurd expressed to him an unwillingness to have the work stopped and promised to contribute his share of the expenses.

When it is remembered that Hurd at this time was a part owner of the property, and interested accordingly in its de-

velopment, the testimony of these two witnesses furnished a sufficient basis for the conclusion reached by the trial judge. It is well established that it is not necessary in order to prove a partnership that articles of copartnership agreement should be produced or that the intention to become partners should be manifested in words. A partnership may, and often is, implied from the acts of those sought to be charged as partners.

What a partnership is, is a question of law. Its existence in a given case, however, is a question of fact depending for its solution upon inferences to be drawn from the evidence adduced. A jury having been expressly waived by the parties, it was the peculiar province of the district court to determine the weight to be given such evidence and we see no reason for interfering with its conclusion, to wit: that a mining partnership existed between Hurd and his co-defendants for the purpose of working the Leo mine and that Hurd was liable as one of the copartners. The same strictness of proof is not required of a plaintiff to charge the defendants as partners as would be necessary if the suit had been instituted by instead of against the firm. *Manville v. Parks*, 7 Colo. 128; 2 Greenleaf on Ev. (15th ed.) 483; *Dwinel v. Stone*, 30 Me. 384; *Everitt v. Chapman et al.*, 6 Conn. 347.

Was interest upon the account properly recoverable in this action? The witness, Tomkins, testified that at the time the goods were purchased by the defendants, he made an agreement with Watson, one of the owners and manager of the mine for the defendants, that interest should be paid upon the monthly balance. This testimony is not disputed by any witness, and no reason is perceived why the ruling of the trial court allowing such interest should be overthrown.

In the early case of *Clear Creek G. S. M. Co. v. Root*, 1 Colo. 374, it was held that interest could be collected upon a mechanic's lien where the rights of third parties were not affected thereby. It is suggested in the argument of appellant that the amount of interest allowed in this case is too

much.  But we are unable to find that this suggestion finds any ground of support in the facts.  The careful computation of the interest shows that the judgment of the trial court is not open to this objection.

Finding no error in the record the judgment must be affirmed.

*Affirmed.*